UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MANSA-EL: BEY,<br><br>    Plaintiff,<br><br>v.<br><br>ERIN LOBACK,<br><br>    Defendant. | Case No. 18-cv-04830-LB<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: ECF No. 1 |

## INTRODUCTION

Plaintiff Mansa-El: Bey,[1] who is representing himself, sued Alameda County Deputy District Attorney Erin Loback, claiming that she violated (among other rights) his Fourth Amendment rights by authorizing his false arrest and subsequent detention on two occasions.[2] He seeks damages of $31,201,872.[3] The court previously granted Mr. Bey's motion to proceed *in forma pauperis*.[4] Mr. Bey declined magistrate-judge jurisdiction.[5] Before directing the United States

---

[1] Mr. Bey uses this punctuation. *See* Compl. – ECF No. 1 at 1. (Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.)

[2] Compl. – ECF No. 1.

[3] *Id*. at 4.

[4] Order – ECF No. 5 at 1.

[5] Declination – ECF No. 4.

ORDER – No. 18-cv-04830-LB

Marshal to serve the defendants with Mr. Bey's complaint, the court must screen it for minimal legal viability. 28 U.S.C. § 1915(e)(2)(B). The defendant also appeared (without service by the Marshal) and filed a motion to dismiss, largely on the grounds in this order.[6] Given the procedural posture of the case (including the court's drafting of this order before it received the defendant's motion), the court will not wait for any opposition and instead dismisses the complaint with leave to amend on the ground that Ms. Loback has absolute prosecutorial immunity for her conduct.

## STATEMENT

Mr. Bey refers to himself as "Mana-El: Bey©" and says that he is a "foreign National of NorthWest Amexem."[7] He complains of two wrongful arrests and his subsequent detention and names Ms. Loback as the defendant based on her role in securing the arrest warrants.[8] The two incidents are as follows.

First, on August 31, 2017, Ms. Loback "filed" an arrest warrant in Alameda County Superior Court that "knowingly contained fictitious statements."[9] As a result, San Leandro police officers arrested Mr. Bey on September 14, 2017 at 1157 Marina Boulevard in San Leandro, "serving a warrant for the arrest of ELBEY, MANSA, under a specific penal code."[10] Mr. Bey informed the officers that he was an "Indigenous National," and the "unnamed Agents/Kidnappers/Co-Partners of Defendant" demanded his identification.[11] When he refused, they searched him and established that he "is known as Mansa-El:Bey and attempted to convert [his] status and identify to one of peonage . . . for the purpose of executing an Abduction (unlawful arrest) all the while knowing that [Mr. Bey's] identity is one of nobility. . . as [Mr. Bey] notified [them] . . . of [his] true identity

---

[6] Mot. to Dismiss – ECF No. 7.
[7] Compl. – ECF No. 1 at 1, 3.
[8] *Id.*
[9] *Id.* at 14.
[10] *Id.* at 15.
[11] *Id.*

and National Character."[12] The officers took Mr. Bey to an "undisclosed detention facility," searched him, "robbed [him]" of all of his personal belongings including moneys, credit cards, and several electronic devices," and interrogated him, using slurs such as "sovereign citizen."[13] He "was held for a ransom of $375,000" and, after he was detained at Santa Rita County Jail for nine days, he was released on bond on September 23, 2017.[14] Mr. Bey sent Ms. Loback correspondence on October 4 and October 25, 2017 about his case; in them he — among other things — gave her three days "to rebut [his] Affidavit of rebuttal" and otherwise challenged the criminal proceedings against him.[15]

    On October 31, 2017, Mr. Bey went to the Rene C. Davidson Courthouse in Oakland, California "to handle some business affairs," and officers accosted and arrested him for fraud, yelling things such as "drop your bag," "put up your hands," "get up against the wall, and "you're under arrest."[16] Ms. Loback was there, and — while Mr. Mr. Bey "was restrained" — spoke to Manual Troche and Gabrielle Wright (presumably police officers and identified by Mr. Bey as "Co-Partners of Defendant").[17] The two officers, with three other officers, forced Mr. Bey into an elevator, where they interrogated and intimidated him, searched him, aggressively went into his pockets, taking his car keys and "snatching at [his] groin area and testicle area and buttocks causing excruciating pain."[18] They took him to "an undisclosed location," asked him (together with other people) "a bunch of questions," said that they would put him in a room until he decided to answer their questions."[19] "[I]ntake professional demanded Claimant's fingerprints and that Claimant strip down to one shirt and remove [his] socks and shoes and if Claimant refused[,] they

---

[12] *Id.*

[13] *Id.* at 15–16.

[14] *Id.* at 17

[15] *See, e.g.*, *id*. at 4, 68–75.

[16] *Id.* at 17–18.

[17] *Id.* at 18.

[18] *Id.*

[19] *Id.* at 18–19.

would force [him] to do as they pleased to meet their demands."[20] Officer Troche kept Mr. Bey's iPhone 7 as evidence.[21] The officers demanded information of him, and they searched his phone and "made calls to random numbers[,] asking questions and sending text messages pretending to be Claimant."[22] They called him names such as "sovereign citizen" and threatened to send him to County jail if he did not cooperate and "give them access to Property belonging to the COLEMAN TRUST," saying that they would not let him out of jail until Mr. Bey delivered a 2017 Toyota Sienna to the police station.[23] Mr. Bey asked for a copy of the arrest warrant, and the officers "dismiss[ed] the requirement for a warrant. . . ."[24] They detained him in a cell for several more hours, and then Officer Troche ("Co-Partners of Defendant") took him upstairs for more "interrogation."[25] Before Mr. Bey was released from the holding cell, "one of the intake professionals threatened" him, saying "YOU better not make any fast moves or I will fuck you up."[26] Mr. Bey still was not given evidence of a warrant.[27] Mr. Bey had a police officer contact one of the "officers of the Trust" (presumably the Coleman Trust), and he heard the police officer say, "If you give me this property (Car, Conveyance [presumably the Siena][,] I will release him."[28] The officers told Mr. Bey that he should file a complaint if he did not like what they were doing.[29] Mr. Bey sat barefoot in a cold holding cell for several hours until 8:45 p.m., when he was

---

[20] *Id.* at 19.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at 19–20.
[26] *Id.* at 20.
[27] *Id.*
[28] *Id.*
[29] *Id.*

released on bail.[30] He asked for his property back and ultimately was told that it was "checked into the property division."[31]

## STANDARD OF REVIEW

### 1. Sua Sponte Screening Under 28 U.S.C. § 1915(e)(2)

A complaint filed by any person proceeding *in forma pauperis* under 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent that it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). Section 1915(e)(2) mandates that the court reviewing an *in forma pauperis* complaint make and rule on its own motion to dismiss before directing the United States Marshal to serve the complaint pursuant to Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1127. The Ninth Circuit has noted that "[t]he language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). As the Supreme Court has explained, "[the in forma pauperis statute] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989). Here, the plaintiff has failed to state a claim upon which relief may be granted, and the named defendant has absolute immunity from suit on the facts alleged. The complaint is dismissed without prejudice and with leave to amend should plaintiff choose to file a First Amended Complaint.

---

[30] *Id.*

[31] *Id.* at 21.

## 2. Failure to State a Claim

Under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitle[ment] to relief," which "requires more than labels and conclusions"; a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555.

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Factual allegations in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court cannot assume, however, that "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (internal quotations omitted).

# ANALYSIS

The court dismisses the complaint on four grounds: absolute prosecutorial immunity, failure to state a Fourth Amendment claim or a challenge to conditions of confinement, and failure to state

claims under the other federal statutes that Mr. Bey identifies.

First, the only defendant is the prosecutor, Erin Loback. For the September 14 arrest, she has absolute prosecutorial immunity because the only allegation against her is that she secured an arrest warrant. For the October 31 arrest, Mr. Bey alleges only that that she spoke to the officers during his arrest, but the overall inference is that her role was the same. State prosecutors have absolute prosecutorial immunity from liability under 42 U.S.C. § 1983 for "pursuing a criminal prosecution" as an "advocate for the State" for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Securing an arrest warrant is such an act. *Waggy v. Spokane County*, 594 F.3d 707, 713 (9th Cir. 2010) (by applying for an arrest warrant, a prosecutor acts as a judicial advocate and does not act in an investigative capacity that otherwise might extend only qualified immunity to the prosecutor); *cf. Genzler v. Loganback,* 410 F.3d 630, 641 (9th Cir. 2005) (prosecutor's "actively directing investigative, police-like actions" by his investigator before preliminary hearing not entitled to absolute immunity); *Milstein v. Cooley*, 257 F.3d 1004, 1011–13 (9th Cir. 2001) (prosecutor not entitled to absolute immunity for fabricating evidence, filing a false crime report or investigating a purported crime, but was entitled to absolute immunity for securing a grand-jury indictment, an information, and an arrest warrant, and for opposing re-appointment of counsel).

Second, to the extent that Mr. Bey complains that his arrest was unlawful, he alleges the existence of an arrest warrant, at least for the September arrest. He does not state a claim against the officers, but if he did, generally their reliance on a facially valid arrest warrant would preclude their liability. *See United States v. Huggins*, 299 F.3d 1039, 1043–44 (9th Cir. 2002) (citations omitted). To the extent that he claims that their search of his person in October violates the Fourth Amendment, or that his resulting detention was unlawful, he does not name the officers as defendants, allege that the force that they used was unreasonable, or otherwise challenge his confinement. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

Third, Mr. Bey charges violations of various federal statutes, such as 18 U.S.C. §§ 242 and 1001. These federal criminal statutes do not contain private rights of action.

## CONCLUSION

The court dismisses the complaint with leave to amend. Mr. Bey may file an amended complaint by September 20, 2018. He also may also dismiss his case voluntarily by filing a one-page notice of voluntary dismissal, which will operate as a dismissal without prejudice. If Mr. Bey does not file an amended complaint by September 20, the court will close the case without prejudice to Mr. Bey's timely refiling it if he is able to fix the defects in the complaint.

**IT IS SO ORDERED.**

Dated: August 28, 2018

LAUREL BEELER
United States Magistrate Judge